(77 App. Div. 12.)

GOLDIE v. GOLDIE.

(Supreme Court, Appellate Division, Fourth Department.   November 25, 1902.)

**1. CONTEMPT—NOTICE OF PROCEEDINGS—SERVICE ON ATTORNEY.**

Code Civ. Proc. § 1773, provides that, where a husband makes default in payment of alimony, any contempt proceedings must be taken as prescribed in section 2269.   Section 2269 provides that the court, on being satisfied of the contempt, must make an order requiring accused to show cause, or issue a warrant commanding the arrest of accused.   Sections 2267 and 2268, relative to contempt, provide that where the offense is a neglect to pay money, and the court is satisfied that a demand has been made and payment refused, it may issue a warrant, etc.   The method of serving papers in an action, prescribed in article 3, tit. 6, authorizes, in most cases, service of a copy on the attorney for the party to be served;   but section 802 provides that such article does not apply to service of process to bring one into contempt.   *Held*, that an order to show cause why one should not be punished for contempt for failure to pay alimony, served on attorneys for defendant, was insufficient.

**2. CONSTITUTIONAL LAW—DUE PROCESS OF LAW.**

An order to show why one should not be punished for contempt for failing to pay alimony, served on the attorney of the defendant, is void, as in violation of the provisions of the constitution of the United States and of the state, declaring that no one shall be deprived of liberty or property without due process of law.

Spring and Williams, JJ., dissenting.

Appeal from special term, Erie county.

Suit by Jessie L. Goldie against William Goldie, Jr.   There was a decree granting complainant a divorce, and from an order adjudging defendant guilty of contempt for failure to pay alimony he appeals.   Reversed.

See 79 N. Y. Supp. 357.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Thomas A. Sullivan, for appellant.

Clark H. Hammond, for respondent.

DAVY, J.   This is an appeal from an order of the special term of the supreme court adjudging the defendant guilty of contempt of court for an alleged failure to pay alimony.   The original order was personally served on the defendant, who paid $25 weekly until. November 25, 1901.   An order was then obtained by the defendant reducing the amount of plaintiff's temporary alimony to $20 a week.   Under the original order, as modified, the temporary alimony was not payable until plaintiff turned over to the defendant certain household goods which belonged to him.   Defendant paid the sum of $175 under the original order as modified, so that on May 5, 1902, there was $263 temporary alimony due the plaintiff.   The court, under its order of May 19, 1902, gave plaintiff the option of delivering the property in dispute to defendant, or a bond in the sum of $750 for the delivery of such property to him if it should be determined, in an action brought

¶ 1. See Contempt, vol. 10, Cent. Dig. § .155; Divorce, vol. 17, Cent. Dig. § 759.

for that purpose, that the property belonged to the defendant. The court in this order further directed that in the event of defendant's failure to pay the $263 alimony then due within 10 days after the delivery of the bond or the property, upon filing of an affidavit showing such failure, the defendant should be adjudged in contempt. Plaintiff caused the bond to be served as directed, but defendant failed to pay the accrued alimony. On June 24, 1902, plaintiff obtained an order ex parte punishing the defendant for his failure to pay the alimony. This order was vacated and set aside upon the ground that defendant should have had due notice of the application. Thereafter plaintiff obtained another order, directing defendant to show cause why he should not be punished for his failure to pay the sum of $263 temporary alimony. This order to show cause was served on the defendant's attorneys, and on the return day the defendant did not appear, and the order adjudging him in contempt was granted, and from that order the defendant appeals.

The principal question is, was there such an irregularity or defect in the granting of the order under which the defendant was arrested and imprisoned as to require that it be set aside? It is urged by the learned counsel for the appellant that the order punishing the defendant for contempt should have been served upon him personally, instead of upon his attorneys; that a personal demand should have been made upon the defendant to comply with the terms of the order; and that he should have been given an opportunity to be heard before punishing him for contempt. It has been frequently held that, before a party can be adjudged finally guilty of contempt and punished, he should have an opportunity to be heard. In the case at bar that opportunity was not given. The defendant, when he was arrested, was not brought before the court for the purpose of being heard, and to enable him to purge himself of the alleged contempt if he could do so. It is well settled that proceedings in contempt are to be construed stricti juris, and all the rights of the defendant must be carefully protected, and no conviction should be had unless there has been a literal compliance with the law. No principle is more vital to the administration of justice than that no man should be condemned in his person or property without notice and an opportunity to make his defense. The constitution of the United States declares that no person shall be deprived of life, liberty, or property without due process of law. A provision of the same words is contained in the constitution of this state. Punishment for contempt involves the loss of liberty or property. The meaning of the words "due process of law," as used in both constitutions, has been explained and defined by very able and learned judges. I need only refer to some of the cases in which these opinions may be found.

In Stuart v. Palmer, 74 N. Y. 191, 30 Am. Rep. 289, Judge Earl said:

"Due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard is absolutely essential."

In People v. Board of Sup'rs of Essex Co., 70 N. Y. 234, Judge Folger, in speaking for the court, said:

"Due process of law requires that a party shall be properly brought into court, and that he shall have an opportunity when there to prove any fact which, according to the constitution and the usages of common law, would be a protection to him or his property."

It would seem, therefore, that the constitution, as interpreted by the courts of this state, means that due process of law requires that, before a person can be punished by imprisonment for a contempt in disobeying an order, he must have notice of it, and an opportunity to be heard before a court clothed with authority to act and decide the questions involved.

It is urged by the learned counsel for the plaintiff, that the service of an order to show cause on the defendant's attorneys, directing the payment of alimony, was authorized by section 1773 of the Code of Civil Procedure, and, for the failure to pay the amount ordered, defendant was liable to be adjudged in contempt, and committed under the authority of said section. That section expressly provides that proceedings to punish a party for contempt must be taken as prescribed in title 3 of chapter 17 of the Code. Section 2269 of that chapter and title provides that:

"The court or judge, authorized to punish for the offence, may, in its or his discretion, where the case is one of those specified in either of the last two sections, and, in every other case, must, upon being satisfied, by affidavit, of the commission of the offence, either: (1) Make an order, requiring the accused to show cause before it, or him, at a time and place therein specified, why the accused should not be punished for the alleged offence; or (2) issue a warrant of attachment, directed to the sheriff of a particular county, or generally, to the sheriff of any county where the accused may be found, commanding him to arrest the accused, and bring him before the court or judge, either forthwith, or at a time and place therein specified, to answer for the alleged offence."

The preceding sections referred to provide that:

"Where the offence consists of a neglect or refusal to obey an order of the court, requiring the payment of costs, or of a specified sum of money, and the court is satisfied, by proof, by affidavit, that a personal demand thereof has been made, and that payment thereof has been refused or neglected; it may issue, without notice, a warrant to commit the offender to prison, until the costs or other sum of money, and the costs and expenses of the proceeding, are paid, or until he is discharged according to law."

It will be seen from the above section of the Code that there are two methods of procedure against a party for such misconduct: The court shall either grant an order that the accused party show cause, at some reasonable time therein specified, why he should not be punished for the alleged misconduct, or issue an attachment to arrest such party and to bring him before the court. But whichever mode of procedure is adopted, the judge must be satisfied by affidavit of the commission of the offense. Until that has been done, no order to show cause can be issued. The offense cannot be committed until the order directing the payment of alimony has been brought to the attention of the defendant, and demand has been made upon him personally that it be paid; and he is not guilty of contempt of court until after that demand has been refused or neglected. Code Civ. Proc.

§ 2268; Flor v. Flor, 73 App. Div. 262, 76 N. Y. Supp. 813; McComb v. Weaver, 11 Hun, 271; Delanoy v. Delanoy, 19 App. Div. 295, 46 N. Y. Supp. 106; Bradbury v. Bliss, 23 App. Div. 607, 48 N. Y. Supp. 912; People v. Rice, 80 Hun, 452, 30 N. Y. Supp. 457.

The statute under which this proceeding is instituted does not specify in what way the order to show cause, with the affidavits on which it was founded, shall be served upon the party accused. The method of serving papers in an action, as prescribed in article 3 of title 6 of the Code of Civil Procedure, authorizes, in most cases, service of a copy on the attorney of the party to be served, but this rule does not apply to the service of papers in contempt proceedings. Section 802 of the Code of Civil Procedure expressly provides that the article and title referred to do not apply to the service of a summons or other process, or of a paper to bring a party into contempt, or to a case where the mode of service is specially prescribed by law. The authorities are numerous that personal service of the original process claimed to be disobeyed is necessary to bring the party into contempt. In Sandford v. Sandford, 40 Hun, 540, it was held that a party cannot be regarded as guilty of contempt for failing to comply with the directions contained in the order, until a copy thereof has been served upon him. In McCaulay v. Palmer, 40 Hun, 40, Justice Daniels, in delivering the opinion of the court, says:

"To bring a party into contempt, it is the practice of the court to require the order which he is charged with violating to be served personally upon him. This is to be done by delivering to him a copy of the order, and at the same time exhibiting to him the original. The consequences of a contempt are serious, and often severe, in the punishment pronounced by the court; and, before a party can be subjected to them, a strict compliance with the practice has been required to be observed."

It was remarked by Justice Rumsey in Bradbury v. Bliss, supra, that:

"In any case, before a person can be punished for a contempt in disobeying an order, he must have had notice of it, and an opportunity to become acquainted with its provisions, and a demand must have been made upon him to do the thing which the order required of him."

In McComb v. Weaver, supra, the learned judge who wrote the opinion of the court said:

"It seems to be well settled that, in order to bring a party into contempt for disobedience of an order or judgment requiring the payment of money or the delivery of property, it is not sufficient that the order or judgment has been served upon him, and he made fully acquainted with its effect; but, in addition thereto, a compliance with the order or judgment must be explicitly demanded by a party who has a right to make such demand."

In this case the defendant was adjudged guilty of contempt, and a warrant of commitment was issued, and the defendant arrested and imprisoned, without any previous notice of the proceeding, or an opportunity to purge himself of the alleged contempt. The defendant was never personally before the court. The order, therefore, for his arrest and imprisonment, was unauthorized, and must be vacated.

The order appealed from should be reversed, with $10 costs and disbursements, and the defendant discharged from custody.

McLENNAN and HISCOCK, JJ., concur.

SPRING, J. (dissenting). This action is for an absolute divorce. By an order granted May 29, 1901, the plaintiff was allowed alimony at the sum of $25 per week. A certified copy of this order was served upon the defendant personally September 14, 1901, and he complied with it for a time, by paying the sum awarded, although somewhat delinquent in making the weekly payments. Upon his application the order was modified by an order of the special term granted December 6, 1901, reducing the allowance to $20 per week. It was contended by the defendant upon the application for the reduction of this award that the plaintiff had in her possession a large quantity of household goods and furniture belonging to him, and she was directed by the order to transfer this property to the defendant; and no alimony was to be payable until she complied with this direction, which she did at once. Thereafter the defendant made payments along from time to time until the 6th day of May, 1902, when there remained unpaid $263. On that day an order was granted at a special term of the supreme court requiring the defendant to show cause why he should not be punished for contempt for failing to pay the alimony granted by the previous orders. A copy of this order was served on the attorneys for the defendant, and they appeared in response to it, and among other papers read in opposition to the granting of the contempt order was the affidavit of the defendant himself. Among the objections urged on his behalf was that the plaintiff had in her possession certain property of the defendant,— silverware, a rug, and other articles,—of the value of $750. The order required the plaintiff to give a bond in the sum of $750, conditioned for the delivery to the defendant of the said property, and within 10 days after the execution and delivery thereof the defendant was required to pay said sum of $263. The order further adjudged the defendant guilty of contempt in failing to comply with the orders before granted, requiring the payment of alimony, and imposed upon him a fine of $263, and also directed that he "be committed by the sheriff of any county in the state of New York to jail, to be there confined in close custody until he shall pay said sum or shall be discharged according to law." The plaintiff, in compliance with said order, executed the bond required, with the National Surety Company as surety thereon; and the same was approved by a justice of the supreme court and delivered to the attorneys for the defendant, in compliance with the order, and accepted by them. The defendant, however, failed to comply with that order, by neglecting to pay the said sum of $263. After the expiration of the said 10 days, an order was granted by the special term requiring the defendant to show cause why he should not be adjudged in contempt of court for failing to obey said orders. The defendant appeared in response to said order to show cause, by his attorneys, and the order appealed from was granted. It provides, among other things, after adjudging the said defendant guilty of contempt, that he be committed to jail "until he shall pay said sum, or shall be discharged according to law."

The contention of the appellant is that no personal demand has been made upon the defendant, as required by section 2268 of the Code of Civil Procedure. Assuming, but not conceding, that this pro-

ceeding was instituted pursuant to that section, we apprehend its strict observance is not essential in this case. To recapitulate the facts, the original order granting alimony was served upon the defendant personally. He complied with it until November 25, 1901. Upon his application a modification of this order was granted December 6, 1901, and property was directed by that order to be delivered over to him by the plaintiff, which was complied with. Then the order of May 19th was granted, and upon that hearing his own affidavit was read, and he again asked relief, requiring the plaintiff to deliver over other property, or secure it to him, in case he should ultimately establish title to it. He accepted the fruits of that order in so far as it was beneficial to him. The whole sum of $263 was then unpaid, and apparently no question was raised as to that fact by the defendant, in opposing the motion. The object of the personal demand is to give him notice of the real situation, and an opportunity to pay. He has persistently set at defiance the orders of the court requiring payment from him, although eager to accept the benefits which accrued to him from them. The requirement as to a personal demand must be fairly construed, and while one who is in contempt for violating the orders of the court should not be put in jail, or his liberty jeopardized, without the fullest opportunity to be heard, still the requirement should not be extended to enable a defiant delinquent debtor, with full knowledge of his contempt, to escape the punishment his misconduct merits.

This proceeding was not, however, instituted pursuant to section 2268 of the Code of Civil Procedure. The basis of it is section 1773, which provides for the enforcement by punishment for contempt by reason of the default of the husband in paying the sum allowed for the maintenance of his wife. That section prescribes that the proceedings to punish the husband shall be in accordance with title 3, c. 17, of the act. The proceeding was evidently commenced under section 2269, which provides for a warrant of attachment to the sheriff, and is based upon an affidavit showing the commission of the offense and upon an order to show cause. There is no specific requirement in that section that a personal demand is necessary unless the proceeding is instituted under the preceding section. Of course, irrespective of any Code provision, a man may not be incarcerated or deprived of his liberty without an opportunity to be heard; but in a case like the present, where it is apparent the delinquent has known of every order, and has been persistent in evading or violating their provisions, he should not be permitted to succeed still further because the payment of the money has not been personally demanded of him.

The order should be affirmed, with $10 costs and the disbursements of this appeal.

WILLIAMS, J., concurs.