(51 Misc. Rep. 468.)

PEOPLE ex rel. WHITE v. FEENAUGHTY, Sheriff.

(Supreme Court, Special Term, Steuben County. October, 1906.)

1. HABEAS CORPUS—REVIEW.

In habeas corpus proceedings only the jurisdiction or power of the court to make the judgment or order under which relator is detained can be attacked.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Habeas Corpus, §§ 21, 25, 4.]

2. ATTORNEY AND CLIENT—SUMMARY PROCEEDINGS—PAYMENT OF MONEY.

Summary proceedings to compel an attorney to pay money claimed by his client may be enforced if the money came through an employment so connected with his professional character as to afford a presumption that it formed a ground of the employment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 266, 267.]

3. SAME—ORDER TO SHOW CAUSE.

On application of a client, the court can under common law inquire into the alleged misconduct of his attorney by an order to show cause,

and the Code of Civil Procedure only regulates the authority and dictates the manner in which such right may be exercised.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 264–273.]

**4. CONTEMPT—SERVICE OF ORDER—NECESSITY.**

     An attorney is not guilty of contempt of court, where the court has ascertained that he has money in his hands belonging to a client and has directed the payment of the same, until the order has been served and payment demanded; and an order adjudging an attorney in contempt, imposing a fine, and ordering his arrest and commitment, where an order has been made requiring him to pay his client certain moneys, but has never been served upon him, is void.

     [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, §§ 68, 69.]

**5. SAME—PROCEDURE—ORDER OF COMMITMENT.**

     Where a proceeding to compel an attorney to pay over moneys to his client is begun by an affidavit and order to show cause, and it is adjudged that he is in contempt, he may be committed by a certified copy of an order so made, as prescribed by Code Civ. Proc. § 2283; but, where the proceeding is begun by affidavit and attachment, a warrant of commitment must issue, as prescribed by section 2281.

Application by the people, on the relation of Andrew A. White, for a writ of habeas corpus to William O. Feenaughty, as sheriff. Relator discharged.

A. D. Wales and J. F. Little, for relator.
W. J. Shaw, for Mrs. Gardner.

WHEELER, J. In January last Cora Gardner made an application to this court, at a Special Term thereof, upon affidavits asking that this relator show cause why an attachment should not be issued against him for having, as her attorney, collected $367.31 for her upon a contract for the sale of her equity in a certain house and lot to one Major, and for having failed, upon demand by her, to pay over the same to her. The said affidavits allege that at the times mentioned the relator was an attorney and counselor at law, having an office and practicing as such in the city of Binghamton, N. Y., and that she placed in his hands said contract under an agreement with him that he was to collect the amount unpaid to her and pay a portion of it over to one Munn and the residue to her; that he did collect the same in the course of time, and that he failed to pay over nearly all of the same, either to Munn or to her; that she demanded payment of so much thereof as was unpaid to her; and that he refused and neglected to pay the same to her.

Upon the said affidavits she obtained an order from this court at a Special Term held in Brooklyn, N. Y., January 24, 1906, whereby the said relator was ordered to pay over to her, or to her attorney, W. T. Shaw, Esq., the said $367.31, with interest from January 24, 1905, or show cause, at a special term of this court, to be held at Goshen, N. Y., February 10, 1906, why an attachment should not issue against him. This order of January 24, 1906, was obtained ex parte, and it and the affidavits upon which it was obtained were thereafter served upon the relator, not by delivering to and leaving with him a certified copy of the order, but by delivering to and leaving with him a copy

of the order and affidavits, and at the same time showing to him the signature of Justice William J. Kelly affixed thereto. It will be noted that the order was a court order, not an order of a judge out of court.

Upon the return of the said order to show cause, on February 10, 1906, the relator appeared and made in writing certain preliminary objections to the motion, which were overruled, and then he filed affidavits in opposition to the motion and touching its merits; and thereupon the court, on February 10, 1906, granted an order referring it to Thomas Watts, a counselor at law of Middletown, N. Y., to take proof as to the facts set forth in the affidavits, upon which said order to show cause was granted, and report the same to this court, with his opinion thereon. It will be noted that this order did not refer it to the said referee to take proof of the facts set forth in the affidavit of the relator.

Pursuant to the said order of reference hearings were had before the said referee; and the said referee, on the 17th day of April, 1906, made his report, with the evidence taken before him, as such referee, in which he reported that there were then due from the relator to the said Cora Gardner $342 for moneys collected by him as attorney and counselor for her, and which the said relator had refused to pay over to her, and then the said referee added, in his opinion, the said relator was guilty of contempt of court for not paying to her the sum of $342 then due her from the relator as her attorney and counselor. Thereafter, and on April 17, 1906, the said Cora Gardner, by her attorney, served a copy of said report and notice of motion for an order to confirm the said report, and adjudging the said relator guilty of contempt of court, and for his commitment for his contempt in refusing to pay over to Cora Gardner the said $342. This motion was noticed to be heard at a Special Term of this court held at New Rochelle, Westchester county, on April 28, 1906. The notice of motion and copy of referee's report were not served upon the relator in person or by mail; but Mr. John B. Sweezy, who had acted as his counsel before the referee, admitted due personal service thereof on April 18, 1906. It will be noticed that the original application for an order to show cause asks for an attachment to issue, and that this notice of motion for April 28th did not ask for an attachment to issue, but asked that the relator be adjudged guilty of contempt of court, not for violating any order, not for refusing to obey the directions of any order. but for refusing to pay over to Cora Gardner $342, which were alleged to have been collected by the relator out of court, and disconnected with any action or proceeding in court.

Upon the hearing of the motion noticed for April 28th, the relator apppeared by counsel and opposed the granting of the motion; but the court, at said term, granted an order adjudging that the failure of the relator to pay the said sum of money to Cora Gardner, as stated in the said affidavits, was a misconduct that was calculated to, and actually did, defeat, impair, impede, and prejudice the rights and remedies of said Cora Gardner; and it further ordered that a fine of $342 be, and the same was, imposed upon the said relator for his misconduct; and it further ordered that the said relator pay the said Cora Gardner the costs and expenses of those proceedings, amounting to $89, and also the sheriff's fees, upon a warrant of commitment, and

further ordered that the relator be directed to stand committed in the common jail of the county of Orange, there to remain in close custody, charged upon said contempt, until the said fine imposed, together with said costs and expenses and the sheriff's fees upon a warrant of commitment, be fully paid, unless he was sooner discharged by the court. This order was a court order, granted at a Special Term, upon notice that it would be heard at a Special Term, and it was directed to be entered in Orange county by Mr. Justice Keogh. This order was never served upon the relator in person, by delivering to and leaving with him a copy, or by delivering to and leaving with him a certified copy thereof; nor was any demand ever made upon the relator for any of the money directed to be paid by the said order, or for the fine therein imposed; nor was any demand ever made upon the relator for the $367.31 at any time after the court had adjudged that it was due and payable from him to Mrs. Gardner.

After the granting of this order of April 28, 1906, Mrs. Gardner's attorney made a motion to resettle the order; and upon that motion, instead of making an order resettling the same, the court made a new order, substantially like the order of April 28, 1906, with the exception that it provided that the relator be committed to the common jail of the county of Broome, instead of the common jail of the county of Orange. This last-mentioned order was never in any way served upon the relator, so far as the evidence shows. After the last-mentioned order was obtained, Mrs. Gardner's attorney procured ex parte an order amending the last-mentioned order, so that it provided that the relator be committed to the common jail of the county of Steuben. It does not appear that this order was ever served upon the relator in any manner. Shortly after having obtained the last-mentioned order providing for his commitment to the jail of Steuben county, a warrant of commitment was issued reciting that it was issued upon the order of April 28, 1906, and directed to the sheriff of the county of Steuben, commanding him to arrest the relator and commit him to the jail of Steuben county until he paid the said fine, costs, and the fees of the sheriff of said Steuben county, or until discharged by the court. This commitment does not state the amount of the sheriff's fees, nor do they appear to ever have been taxed. By virtue of this commitment, the sheriff of the county of Steuben arrested the relator and placed him in the jail of said county. Shortly thereafter the relator began this proceeding and obtained a writ of habeas corpus, which was served upon the sheriff of the county of Steuben, and the relator was brought by the sheriff before me and made his return, and the relator made his traverse thereto. The relator has challenged the validity of the proceedings to punish him for contempt, and the order adjudging him in contempt and fining him, and also the validity of the warrant of commitment under which he was arrested and placed in jail.

The law is well settled that, upon a writ of habeas corpus, the officer issuing the writ cannot review the order or judgment of a court or officer who had jurisdiction of the subject-matter and of the person, because of any irregularity or error committed in the proceeding or action which culminated in said order or judgment; that the remedy of the aggrieved party in such a case is to move to vacate the order or

judgment for irregularity, or appeal therefrom where error is alleged; but that the officer issuing the writ may review and pass upon the question whether the order or judgment attacked was made in a proceeding of which the court or officer had jurisdiction of the subject-matter or of the person, and may review the question whether the court or officer, even though it or he had jurisdiction, was authorized by law to make the order or judgment or issue the mandate complained of. In short, only the jurisdiction or the power of a court to make a particular order or judgment can be attacked in this proceeding. It is clear that, where the court has failed to obtain jurisdiction of the subject-matter or of the person, any order that it may make therein is void; or where the court or officer has obtained jurisdiction of the subject-matter and of the person, yet where, in such a proceeding or action, it makes an order unauthorized by law, or issues a mandate unauthorized by the law, then such order or mandate is void and can be attacked, as in this proceeding.

The relator not only claims that the court had no jurisdiction to make the order adjudging him in contempt and fining him, and that said order is void, but also claims that the mandate or commitment issued upon said order is unauthorized by law and is void. He also claims that some of the proceedings and orders granted in the proceeding instituted by Mrs. Gardner against him were irregular; that the order adjudging him in contempt and fining him was not warranted upon the evidence and is erroneous. We have nothing whatever to do with the merits of this controversy. They only can be reviewed by an appeal from the order. We have nothing whatever to do with the irregularities. The relator's remedy there was or is to move to vacate the proceedings or orders alleged to be irregular. We are only to ascertain whether the order or mandate complained of is void, so we have to deal with purely a question of law.

The relator contends that the affidavits upon which the first order to show cause was obtained, and which was the initial proceeding, failed to show that the relation of attorney and client existed between Mrs. Gardner and him, claiming that the relation of attorney and client, which was contemplated by law in such cases, was one arising out of some action or proceeding pending in court. In this contention we think the relator is wrong. In Matter of Dakin, an Attorney, 4 Hill, 42, which was a proceeding of a summary character against an attorney to compel the payment of money in his hands claimed by his client, the court said:

"The summary jurisdiction exercised by the courts for the purpose of compelling attorneys to perform their duties to clients is not only just in itself, but it exerts a wholesome influence upon the whole body of the legal profession. If the client were driven to the dilatory and sometimes inefficient remedy by action, when the attorney improperly neglects to pay over money, a few unworthy members of the bar would bring odium upon all the rest. It is not essential to the exercise of a summary remedy that the attorney should have received the money in any suit or legal proceeding, or that he should have been employed or instructed to commence legal proceedings. It is enough that the money was received in his character of attorney, as where a demand is left with him with instruction to call for payment, or obtain better security, but without any directions to sue. When the attorney is also engaged in other business, and the particular character in which he was retained does not af-

firmatively appear, it may be inferred from the nature of the employment and the other circumstances of the case."

In De Woolfe v. ———, 2 Chit. 68, Bailey, J., said:

"The recent doctrine was, whenever a person had been employed in consequence of his being an attorney, though not in an action, the court will interfere summarily to compel him to do what was right."

In that case the attorney had received money under a power which described him as counselor and attorney, and the court said, "It was otherwise manifest that the employers contemplated the party's present character," and he was ordered to account and pay over the money.

In Matter of Atkin, 4 Barn. & Ald. 47, Abbott, C. J., said:

"Where a person is employed in a matter wholly unconnected with his professional character, the court will not interfere in a summary way to compel him to execute faithfully the trust imposed in him; but, where the employment is so connected with his professional character as to afford a presumption that his character formed the ground of his employment by his client, then the court will exercise this jurisdiction."

In Ex parte Statts, 4 Cow. (N. Y.) 76, it was held that, where a bond was left with one Mr. Edmonds in his character as attorney, though no specific directions were given to bring suit, and it turned out that there was no need of a suit, and that the money was paid in, and he refused to pay over, the client was entitled to the aid of the court in obtaining it in the same manner as if it had been collected by the attorney by suit. In that matter a proceeding was begun by an affidavit, and an order to show cause why an attachment should not issue against the attorney was asked. This court has authority by common law upon application of a client to inquire into the alleged misconduct of his attorney. The cases above cited held this, for in each of the above the proceeding was of a summary character. It was not by action. It was begun by presenting and filing affidavits with the court, in which an order was asked directing the attorney to appear and show cause why an attachment should not be issued. That seems to have been the old practice.

In People v. Smith, 3 Caines, 221, the court held "that, if an attorney withheld the money of his client, the court will afford relief in a summary way without driving the client to an action"; and in that proceeding an affidavit was filed, and an order to show cause why an attachment should not issue was obtained.

In Matter of Kuhne v. Daily, 23 Hun, 282, which was a proceeding instituted by a client to compel her attorney to settle and compel the attorney to transfer certain property to her, the court said:

"The object of this proceeding is to afford a suitable remedy to the petitioner for the alleged misconduct toward her on the part of her attorney."

The jurisdiction of the court to entertain a summary proceeding like this for the purpose of compelling an attorney to do justice to his client cannot be doubted. It springs from its power and duty, both at common law and by statute, to exercise needful control over the conduct of the officers of the court.

In Matter of Ney Co. (Sup.) 99 N. Y. Supp. 982, the court held that it had authority by common law to inquire into the misconduct of

an attorney, and to adjudge the relation of an attorney and client, and the amount collected and not paid over, and order payment, and to compel the attorney to deal justly with his client. And to the same effect is Matter of H———, an Attorney, 87 N. Y. 521. And Matter of Langslow, 167 N. Y. 314, 60 N. E. 590, impliedly holds this, although in that case it was decided that the relation of an attorney and client did not exist; but nowhere was the authority of the court to inquire into the conduct of an attorney toward his client in a summary manner challenged, nor was the practice challenged of beginning a summary proceeding by affidavit and petition and obtaining an order to show cause.

In Matter of H———, an Attorney, 87 N. Y. 521, the court held:

"That the general control which the Supreme Court had by common law over attorneys and their conduct was not taken away by the Code of Civil Procedure; and that the provisions of said Code in relation to the punishment of an attorney for misbehavior in his office or trust, or for a willful neglect or violation of his duty therein, only regulates that authority and dictates the manner of its exercise in the class of cases specifically mentioned; i. e., 'when the right or remedy of a party to a civil action or special proceeding pending in the court may be injuriously affected.' "

That this summary proceeding may be begun by affidavit or petition and order to show cause, we also cite Matter of Sardy, 47 N. Y. St. Rep. 312, 19 N. Y. Supp. 575; Bradbury v. Bliss, 23 App. Div. 606, 48 N. Y. Supp. 912; Maigille v. Leonard (Sup.) 92 N. Y. Supp. 656.

Mrs. Gardner had the right to institute a proceeding of a summary character by affidavit, and to obtain an order, if the facts warranted, directing the relator to show cause why he should not pay the amount which she alleged that he had collected for her, as her attorney, and which she alleged that he refused to pay to her upon demand; and, upon the hearing of that application, the court had the power to inquire into the alleged misconduct, and the power to adjudge whether the relation of attorney and client existed between her and the relator, the amount that he collected under such relation, the amount unpaid, and that demand had been made therefor, and that he had neglected or refused to pay over. This is as far as the court in that proceeding had the right to go, and we are of the opinion that the original affidavits presented alleged facts sufficient to show the relation of attorney and client within the meaning of the law, and that this court had jurisdiction to inquire into the alleged misconduct of the relator as her attorney and to direct him to pay over the amount due. If, upon such motion, the court had made such order, directing the relator to pay over the amount claimed, then it was the duty of Mrs. Gardner to have served upon the relator a certified copy of the court's order so directing him to pay over, and, perhaps, to have demanded payment thereof. At least, it was her duty to have served a certified copy of the order upon him. Then, if the relator had refused to obey the directions contained in that order, Mrs. Gardner could have instituted a special proceeding on the foot of the said order, and entitled the same in her summary proceeding, and asked that the court adjudge the relator guilty of a contempt in refusing to obey the said order of the court, which had directed him to pay the said sum; and, in that pro-

ceeding, if the facts warranted, the court would have had the power to have made an order adjudging him in contempt and fining him therefor. The proceeding to punish him for contempt could have been begun by her, either by obtaining an attachment in the first instance, and then filing interrogatories, etc., and the filing of answers thereto, etc., or, she could have begun the proceeding to punish him by presenting and filing affidavits and obtaining an order to show cause why he should not be punished for his misconduct, not for having collected the money and refused to pay it over to Mrs. Gardner before legal proceedings were begun, but for having refused to obey the order of the court made in the summary proceeding, wherein he was directed to pay over this sum of money to her.

Misconduct, which can be treated and punished as a civil contempt, must be such as to defeat, impair, impede, or prejudice the right or remedy of a party to a civil action or proceeding; and that the alleged misconduct was to that effect, must be made to appear and be adjudicated. A person cannot be punished for a civil contempt in failing to obey an order directing him to pay over a certain sum of money, or to stand committed for contempt, unless the second order be made after his refusal to pay the sum of money; a copy of the first order having been first duly served upon him, and a demand having been made upon him for the moneys directed to be paid thereby. First National Bank v. Fitzpatrick, 80 Hun, 75, 30 N. Y. Supp. 15; Kuhn v. Kuhn, 23 N. Y. St. Rep. 387, 4 N. Y. Supp. 952; Bradbury v. Bliss, 23 App. Div. 606, 48 N. Y. Supp. 912; Goldie v. Goldie, 77 App. Div. 17, 79 N. Y. Supp. 271.

In Bradbury v. Bliss Mr. Justice Rumsey states the practice and the law in proceedings to punish for a contempt. We quote from his opinion:

"In any case, before a person can be punished for a contempt in disobeying an order, he must have had notice of it, and an opportunity to become acquainted with its provisions, and a demand must have been made upon him to do the thing, which the order required of him. The proceedings to punish for contempt must be taken as prescribed in the statute. They are stricti juris. The statute requires that there should be served upon the accused, before he shall be punished for contempt, either an order to show cause why such punishment should not be inflicted, or there should be issued a warrant of attachment to bring him before the court. But, whichever mode of procedure is adopted, certain facts should be made to appear to the court. These facts are specified in section 2269 of the statute (Code Civ. Proc.), and one of them is that the judge must be satisfied by affidavit of the commission of the offense; and until that has been done no order to show cause can be issued. But the offense cannot be committed until the order directing the act to be done has been brought to the attention of the defendant, and the demand has been made upon him that it shall be done, and he is not guilty of a contempt of court until after that demand has been refused or neglected."

Nowhere can you find that it has been adjudicated that the collection by an attorney of moneys of his client and a refusal upon demand of the client to pay over the same is, of itself, a contempt of court. It is a misconduct of the attorney, and one that well warrants the client appealing to the court in a summary manner to have adjudged as a misconduct and to obtain an order directing the attorney to pay the money to the client. This summary proceeding, when instituted, is

the very proceeding referred to by the section of the Code governing the proceedings on contempt. First, there must be a proceeding brought by the client against the attorney, and in that proceeding the relation of client and attorney, amount collected, amount unpaid, and whether demand has been made for it, all can be adjudicated, and the court has jurisdiction to do that, and the only order the court could make is one directing the attorney to pay over. That is the final order in that proceeding, and when the attorney has been duly served with that order, and a demand has been made, and he refuses to obey it, then for the first time has a contempt of court been committed. No contempt of court can be committed before the court has obtained jurisdiction, or before it has granted an order in the proceeding. The contempt is a disobedience of the order, and the order of the court which was disobeyed is one which was made in a proceeding to inquire into the misconduct of the attorney.

Mrs. Gardner failed to correctly follow up her original application. If she was entitled to any order whatever, after the referee made his report, it was an order directing the relator to pay over the money. Then, had the relator failed upon due service of the order and demand, she had the right to begin a proceeding to punish the relator for a contempt. In the moving papers to obtain an order adjudging the relator in contempt and for a fine it appears affirmatively that the contempt alleged was for his failure to pay over the money which he collected long before Mrs. Gardner and he got into court. Those moving papers do not show any contempt, and therefore the court had no jurisdiction to make an order adjudging him in contempt and fining him therefor as it did, and the order is void, and the proceedings thereunder void.

As stated, the relator claims that the process under which he was arrested is void. It was a warrant of commitment, which was delivered to the sheriff and under which he made the arrest, not a certified copy of an order of the court. The Code of Civil Procedure prescribes two methods of proceeding against a party charged with contempt. One is by affidavit and attachment; the other is by affidavit and an order to show cause. Where a party proceeds by affidavit and attachment, and it is adjudged that the party charged is in contempt, then a warrant of commitment must issue as prescribed by section 2281 of the Code of Civil Procedure; but, if the proceeding were begun by an affidavit and order to show cause, then the offender may be committed by a certified copy of an order so made, as prescribed in section 2283 of the Code of Civil Procedure. The proceeding in question was begun by affidavit and order to show cause, or at least was not begun by attachment; and the proper process, under which the sheriff should have arrested the relator, was a certified copy of the order adjudging contempt and imposing the fine.

In People ex rel. Post v. Grant, 50 Hun, 244, 3 N. Y. Supp. 142, the court said that either a warrant of commitment could be issued or a certified copy of the order served, yet it is apparent, upon reading that case, that this point was not well considered; and, furthermore, it does not appear how that proceeding was instituted. We are not disposed to follow that decision, and we are of the opinion that the

mandate under which he was arrested was not authorized by an order of the court, or by a provision of law, and was therefore void, and his arrest thereunder void. We therefore decide and hold that the order adjudging the relator in contempt and imposing the fine against him and his arrest and the order of commitment were, and each is, void, and that the relator is unlawfully imprisoned and restrained of his liberty; and a final order discharging him forthwith is directed, with his costs and disbursements of this proceeding, to be duly taxed against Mrs. Gardner.

Ordered accordingly.