In the Matter of EMANUEL BERSON, Petitioner, against LOUIS GOLDSTEIN, as a Judge of the Kings County Court, et al., Respondents.

Supreme Court, Special Term, Kings County, June 23, 1953.

812

*William Richter* for petitioner.

*Miles F. McDonald, District Attorney* (*Aaron Koota* of counsel), for respondents.

HART, J. Petitioner is a former member of the New York City police department. In this proceeding under article 78 of the Civil Practice Act he seeks to review the order made by a Judge of the Kings County Court adjudging him in criminal contempt of court for refusing to appear before the Grand Jury investigating police-gambler corruption in Kings County and there answer questions pertaining to his personal finances since leaving the police department.

Petitioner, who had been for some time prior thereto a member of the police department operating as a plain-clothes man, was called on April 19, 1950, as a witness before the Grand Jury investigating the gambling racket and the police connection therewith. He executed a formal waiver of immunity pursuant to section 2446 of the Penal Law and testified under oath. On January 10, 1951, petitioner again was called before the Grand Jury at which time he executed another similar waiver. On such occasion he was given a form of financial questionnaire to fill

out. He reappeared before the Grand Jury on January 15, 1951, with the questionnaire completely filled out and swore to the truth of the answers therein made.

In February, 1951, petitioner resigned from the police department. On March 9, 1953, he was again called before the Grand Jury at which time, being asked specifically as to whether he had ever received moneys while a police officer from gamblers or book-makers for the nonperformance of his duties as a police officer, the witness declined to testify " because I do not recognize my previous waiver of immunity as being in force and effect, and I feel it would be a violation of my legal and constitutional rights if I am forced to testify under these circumstances." After being directed by the court to answer the question petitioner testified before the Grand Jury that he did not receive any graft or moneys from book-makers or gamblers while a police officer.

Certain questions then were put to him concerning his activities and income since he resigned from the police department. The witness declined to answer these before consulting with counsel. The assistant district attorney then outlined to him the purpose and scope of the further questioning which was contemplated, stating " MR. KOOTA: I am telling you what the issue involved here is and I want you to listen. We intend to question you about any business which you might have been in or were in or any of your financial matters — any matters involving your finances from the time you left the Police Department until the current date. The purpose of that questioning, so that you may understand, is to find out whether you have had assets or income during the period from the time you left the Police Department until the present which emanated from other than legitimate sources. In other words, which represent the proceeds of bribes from gamblers and bookmakers."

The following colloquy also ensued between the witness and the assistant district attorney: " The Witness: You are asking me about my private life as a private citizen? MR. KOOTA: I am going to ask questions about your finances — The Witness: As a private citizen? MR. KOOTA: — From the time you left the Police Department until now— The Witness: As a private citizen? MR. KOOTA: — for the purpose of ascertaining whether any moneys that you received or had, if any, after you left the Police Department can be traced to graft or bribes that you received from bookmakers. Do you understand what I just said? The Witness: I understand what you just said."

The witness, after some further questioning, was then excused to leave the room and consult with his counsel. After doing so he returned to the Grand Jury room and he was then asked: "By Mr. KOOTA: Mr. Berson, as I explained to you previously, this Grand Jury intends to ask you questions about your income and your assets between the time that you resigned from the Police Department and today. If questions are asked of you relating to that subject-matter will you answer those questions? A. No."

His refusal to answer, the witness stated for the record, was based on the advice of counsel and on the particular ground "that such questions would be outside the limit and scope of this investigation in that what official conduct and matters I would be questioned about would have occurred since leaving the Police Department and in the pursuit of my private interests as a private citizen entirely unrelated to the police force and the time I was a police officer. I feel that it is immaterial to this investigation and would tend to violate my legal and constitutional rights."

The Grand Jury then moved the County Court for an order overruling the objections raised and requiring the witness to answer. Such motion came on to be heard simultaneously with a cross motion by petitioner to quash a subpœna which directed his appearance before the Grand Jury. After hearing argument thereon, the court granted an order (order of May 1, 1953) directing the petitioner herein to appear before the Grand Jury and "to answer all questions which may be propounded to him in said Grand Jury concerning his finances, income and assets between the time that said respondent resigned from the Police Department of the City of New York and the 20th day of March, 1953, and in and about said period." The motion to quash the subpœna was denied.

On May 11, 1953, petitioner again appeared before the Grand Jury. He was then asked: "Q. I now ask you, Mr. Berson, if I were to ask you questions regarding your finances from the time you left the Police Department until the time that the application was made to Judge GOLDSTEIN who directed you to answer those questions would you answer those questions? * * * A. I would not answer those questions."

The witness was permitted to put into the record before the Grand Jury the reasons for his stand, that the waivers executed prior thereto were ineffective and inoperative and that his counsel had advised him that he was appealing the ruling of the County Judge directing him to testify; also that "the District

Attorney has admitted that I am a proposed defendant and not a mere witness in a John Doe proceeding."

At the conclusion of this statement, the assistant district attorney conducting the proceedings made the following comment: " Q. Mr. Berson, I desire to correct for your information a statement that you made. You stated that you were being interrogated as a prospective defendant. That is not correct. You may or may not be a defendant. That depends on what evidence is in the possession of the Grand Jury but I do so (evidently ' deny ') that the investigation is directed against you personally."

This court is at a loss to understand how this statement can be reconciled with the earlier colloquy on April 8, 1953, between the Judge of the County Court and the assistant district attorney: " The Court: Isn't there a strong indication, from your questioning, that you are aiming at him, and nobody else? Mr. KOOTA: No question about it. The Court: And that he might be a proposed defendant? Mr. KOOTA: I beg your pardon? The Court: That he might be a proposed defendant? Mr. KOOTA: Yes indeed he may. I make no bones about it."

Following the refusal by the witness to answer the question, the Grand Jury in a body appeared the same day before a Judge of the County Court and made application that the witness again be required to answer or that he be adjudged in contempt and committed therefor. Petitioner (respondent therein), through his counsel, denied that his refusal was willful, contumacious or contemptuous, and again outlined his reasons therefor, based on his conception of his legal and constitutional rights.

At the conclusion of the hearing the following ensued as shown by the record:

" The Court: The Court wishes to make the following statement:

" On April 30th this year, this Court in a written decision, which is on file, ordered and directed the respondent, Emanuel Berson, to return before the December, 1949 Grand Jury on the 11th day of May, 1953, at 10:30 o'clock in the forenoon thereof, and further ordered and directed that the respondent witness, Emanuel Berson, answer all questions which may be propounded to him in said Grand Jury, concerning his finances, income and assets between the time that said respondent resigned from the Police Department of the City of New York and on the 20th day of March, 1953, and in and about said period.   *   *   *

" The Court again directs you, Emanuel Berson, to return to the Grand Jury room forthwith, and further directs you to answer all questions which may be propounded to you in said Grand Jury concerning your finances, income and assets between the time you resigned from the Police Department of the City of New York and on the 20th day of March, 1953, and in and about said period. Do you still refuse to obey the direction of the Court, Mr. Berson?

" The Witness: I do not want to seem in contempt of this Court. I feel that I must refuse only because I want to explore further my constitutional rights. If I follow the Court's order, Judge, I may do myself possibly, and other witnesses after me, harm. I do not feel, Judge, that I am being contumacious. The very purpose of my refusal now is to further explore, define my rights, guaranteed to me by both the Constitution of the United States and the Constitution of the State of New York. I feel I owe it to myself to do that, and it seems, Judge, that the only way I can get a clear definition of my rights is to refuse your order. I do so with all humility and with no contempt in mind.

" The Court: Well, Mr. Berson, you have been given an opportunity to go before the Grand Jury and testify, and from your statement you have refused to do so.

" You have therefore wilfully disobeyed the order of this Court, dated April 30th, 1953, and the direction of the Court today. Your actions, to say the least, have been deliberate, wilful and contumacious.

" The Court therefore adjudges you guilty of criminal contempt for wilful disobedience of its lawful mandate, and your contumacious and unlawful refusal to obey the directions of the Court to go before the Grand Jury and testify."

A formal order of such adjudication and commitment was made and entered on May 11, 1953. This is the order under review.

This order contains the following summary of the findings made:

" Upon the conclusion of the argument, this Court found and hereby does find that the excuses of the respondent for refusing to answer said question including his announced intention of appealing from the orders of this Court dated May 1, 1953 were made in bad faith and solely as a pretext for delay. The Court thereupon ordered and directed the said respondent Emanuel Berson to return forthwith to said Grand Jury and to answer said questions concerning his finances, income and assets. Thereupon and in open court, the respondent refused to return to said

Grand Jury and refused to answer said questions; and to obey the order of this Court.

" This Court has found and now finds that the questions propounded to said respondent, Emanuel Berson, concerning his finances, income and assets between the time that said respondent resigned from the Police Department of the City of New York and the 20th day of March, 1953 and in and about said period, were legal and proper interrogatories."

Petitioner thereupon was adjudged guilty of contempt. He attacks the validity of the order under review and of his contempt commitment on various grounds only some of which merit serious consideration. Petitioner asserts that since he was being examined as a proposed defendant rather than as a witness his refusal to answer may not be deemed contumacious. While it is true that where the inquiry is a general one and is not directed against a particular individual, the fact that, on the basis of information elicited, grounds for a criminal prosecution may evolve against a witness, may not serve as a bar to such prosecution (*People* v. *Reiss,* 255 App. Div. 509; *People* v. *Bermel,* 71 Misc. 356). In the instant case, by the colloquy of the assistant district attorney above set forth *in extenso* he conceded that petitioner was the target he was aiming at. Under these circumstances, the propriety of such an inquiry may well be questioned in determining whether petitioner was contumacious and contemptuous in refusing to reply. (*People* v. *Ferola,* 215 N. Y. 285, 289; *People* v. *Gillette,* 126 App. Div. 665; *People* v. *Rauch,* 140 Misc. 691.)

Petitioner further urges that the waivers executed by him apply only to acts antecedent thereto and are not operative *in futuro* as to acts occurring subsequently, and that therefore he was within his constitutional rights to refuse to comply with the court's oral direction and order to answer questions relating to his assets and income subsequent to the severance of his relationship with the police department. Considering the merit of petitioner's position insofar as it relates to subsequent independent acts or crimes, the People contend that they may inquire as to the receipt of assets or income which related to his activities as a policeman and which could be traced to graft or bribes received from book-makers. It is to be noted, however, that neither the court's oral direction nor its order which are the basis for the adjudication of contempt modified the questions to an inquiry in that limited form. Petitioner on many occasions in the record was advised that he was to be questioned generally as to his finances since resigning from the police department. There is no

merit, however, to the petitioner's position as to all transactions or acts testified to by him which occurred subsequent to his execution of the waivers of immunity. Petitioner is immune from prosecution by reason of section 381 (relating to bribery), section 584 (relating to conspiracy) and section 996 (relating to gambling) of the Penal Law. The immunity granted by these sections is as broad as the constitutional guarantee (*Matter of Grand Jury of Co. of Kings* [*Nicastro-Chadeayne*], 279 App. Div. 915, affd. 303 N. Y. 983).

Petitioner also contends that there was an insufficient basis for finding him in contempt in view of the fact that no specific question was propounded to him which he refused to answer, but merely a general interrogation of an " if " nature, viz., " if " certain types of questions were to be put to him as to certain matters would he decline to answer them, to which he replied that he would not answer.

While it may be that there is no requirement calling for the propounding of a specific question (see *People ex rel. Hofsaes* v. *Warden of City Prison,* 302 N. Y. 403, 407; *Matter of Grand Jury of Co. of Kings* [*Nicastro-Chadeayne*], *supra*), in view of the failure of the question to include the limitation restricting it to moneys received by him subsequent to his retirement which related to his activities as a policeman, there is merit to his claim that his refusal was not willful, contumacious or contemptuous but was based on a sincere concern for the proper protection of his rights, as to which there was justifiable doubt and confusion. Though the assistant district attorney specifically stated " the purpose of that questioning, so that you may understand, is to find out whether you have had assets or income during the period from the time you left the Police Department until the present which emanated from other than legitimate sources. In other words, which represent the proceeds of bribes from gamblers," the county court in its oral direction and order did not impose such a limitation and direction.

In view of the various contentions of petitioner which were earnestly urged by him in good faith, the merits of which were not free from doubt, it may not be said that his refusal to answer was contemptuous or contumacious. He is now in a " position to make an intelligent and conscious choice whether to answer questions or whether to subject himself to possible contempt proceedings by refusing to do so " (*People ex rel. Hofsaes* v. *Warden of City Prison,* 302 N. Y. 403, 408, 409, *supra*).

A criminal contempt must be established beyond a reasonable doubt (*Matter of Steingut* v. *Imrie,* 270 App. Div. 34). Contempt

proceedings are *stricti juris* (*Goldie* v. *Goldie,* 77 App. Div. 12; *Matzke* v. *Matzke,* 185 App. Div. 533, 537). In view of the foregoing, the order and commitment are vacated and petitioner is discharged without prejudice to the recall of petitioner before the Grand Jury as a witness for such further proceeding not inconsistent with the opinion as may be necessary and proper to compel petitioner to answer questions relevant to the Grand Jury investigation.

The companion writ of habeas corpus is dismissed since the proper remedy to review an adjudication of criminal contempt alleged to have been committed in the presence of the court is by an article 78 proceeding (*Matter of Grand Jury of Co. of Kings* [*Reardon*], 278 App. Div. 206). Settle order on notice.