(86 App. Div. 2⁻⁻

PEOPLE ex rel. PALMIERI v. MAREAN, Justice of Supreme Court.

(Supreme Court, Appellate Division, Second Department.   July 24, 1903.)

1. CONTEMPT—FINAL ORDER—REQUISITES.
    The mere statement in the final order committing an attorney for con-
    tempt that he, in the immediate view and presence of the court, behaved
    in an insolent and disorderly manner, which tended to interrupt the pro-
    ceedings of the court and impair the respect due to its authority, is an
    insufficient statement of the particular circumstances of the offense to
    satisfy the requirements of section 11 of the Code of Civil Procedure.
        Goodrich, P. J., dissenting.

Certiorari by the people, on the relation of John Palmieri, to re-
view a determination made by Joseph T. Marean, one of the justices of
the Supreme Court, adjudging the relator guilty of a criminal con-
tempt of court, committed in the immediate presence of the court, and
imposing upon him a fine of $50.   Determination annulled.
    See 82 N. Y. Supp. 1111.
    Argued before GOODRICH, P. J., and BARTLETT, JENKS,
and WOODWARD, JJ.

John Palmieri, in pro. per.
John F. Clarke, Dist. Atty., for respondent.

WILLARD BARTLETT, J.   The facts which the return states to
have occurred before Mr. Justice Marean, in my opinion, are sufficient
to uphold an adjudication finding the relator guilty of contempt; and
I should have no hesitation in agreeing with the Presiding Justice,
were it not for the decision of the Court of Appeals in the case of
People ex rel. Barnes v. Court of Sessions, 147 N. Y. 290, 41 N. E.
700, in regard to the contents of the commitment in such a proceed-
ing as this.   There, although the court assumed that the evidence was
sufficient to warrant the conviction, the adjudication was reversed and
the proceeding dismissed on the ground that the mandate of commit-
ment did not specify the particular circumstances of the relator's
offense, as required by section 11 of the Code of Civil Procedure.   In
other words, this omission in the commitment is held to be fatal upon a
review of the proceedings by certiorari, although the papers before the
reviewing tribunal clearly established the sufficiency of the proof to
sustain the conviction of the relator.   The authority or correctness of
this decision cannot be questioned here, and it is impossible to sustain
this conviction without disregarding the rule therein laid down, unless
we are prepared to hold that the statement in the commitment or final
order to the effect that the relator, in the immediate view and presence
of the court, behaved in an insolent and disorderly manner, which tend-
ed to interrupt the proceedings of the court and impair the respect due
to its authority, is a sufficient statement of the particular circumstances
of the offense.   The Presiding Justice thinks it is enough, but I find
myself unable to adopt that view.   The statement that an attorney be-
haved in an insolent and disorderly manner conveys no idea whatever
as to the particulars of his conduct.   There are scores of ways in
which insolence may be manifested, and innumerable sorts of disor-
derly behavior.   It is difficult, of course, in a written statement, to

convey to the mind of the reader a photographic impression of what
occurred at the time of an alleged contempt, such as this; but the
facts set out in this very return show that it is entirely possible to par-
ticularize to some extent, and lay before the tribunal of review, in the
commitment or final order itself, the very circumstances which are re-
lied upon as constituting the offense. I think that the decision in the
Barnes Case requires this to be done, and that, because it has not been
done in the case at bar, it is our duty to annul the determination.
Were it not for the authority cited, I should be disposed to hold that
the facts stated in the return might be regarded as helping out the
commitment sufficiently to sustain the conviction.

Determination annulled, without costs. All concur, except GOODRICH,
P. J., who dissents.

GOODRICH, P. J. (dissenting). The relator seeks, by writ of
certiorari, to review a determination of Mr. Justice Marean, adjudg-
ing the relator guilty of a criminal contempt, committed in the im-
mediate presence of the court, while the relator, as counsel for a de-
fendant, was conducting a trial before the justice and a jury.

Section 2138 of the Code of Civil Procedure provides that, where
a writ of certiorari is issued by the Appellate Division to review the
determination of an inferior tribunal in a case like the one at bar, it
must be heard upon the writ and return, and the papers upon which
the writ was granted. These papers show that the order under re-
view was entered in an action based on a claim that the plaintiff, as
a broker, had sold two houses to the defendant therein, and had paid
to it a portion of his brokerage commission on the consideration that
he should have the leasing of the property. Relator was counsel for
the defendant. The plaintiff was under examination as a witness on
his own behalf when the occurrence upon which the relator's contempt
is predicated arose. The petition contains the stenographer's minutes
of the testimony, and the return embodies the same testimony, with
the allegations of the justice in regard thereto in parentheses, as fol-
lows:

"Q. In the month of February last, 1902, did you have the sale of two
buildings known as 320 and 322 East 113th street? A. Yes; I sold those
two houses to this corporation, Societa Co-operativa Corleonese Francesco
Bentivegna— Q. by the Court. You sold it as a broker? A. Yes, sir;
I sold these two houses to these same people who are here to-day— Q.
who was the owner of these premises? A. P. L. Marlow. Q. What was
the consideration price of that? (Objected to as immaterial, incompetent,
and irrelevant. Objection sustained.) Q. You received a commission on
that? A. Yes; I received $500, and out of these $500 I paid $300 to these
people— (Objected to.) Witness (continuing): In consideration that they
would give me the privilege of leasing their property. I want to say what
I have to say— (Objected to.) Witness: I want just to say what I— in
a legal way, your honor. Mr. Palmieri: The judge is here to say as to
that. Witness: The judge don't object to what I have to say. Mr. Pal-
mieri: That question called for 'Yes' or 'No,' and I move to strike out every-
thing else this witness stated. The Court: I will allow them to prove that
he divided commissions with your people, which he got on the sale of the
land, if you propose to prove that in consideration of that they agreed to let
him have the renting of it. Mr. Oishei: That is it. Witness: I gave more
than half— Beg your pardon, your honor. I gave them more. Mr. Pal-

mieri: I move to strike that out.  Mr. Oishei: You must not say anything when Mr. Palmieri makes an objection.  You must stop and let the court rule on it.  Witness: All right.  I didn't know that.  First time, you know. Mr. Palmieri: First time?  Witness: In court, yes.  (Upon this the following occurred:)  The Court: Now sit down, Mr. Palmieri.  Mr. Palmieri: Then I object.  (At this time there was no unanswered question pending, nor anything else to which an objection could intelligently refer.  He did not sit down, and made no motion to do so.)  The Court: Do you hear me? Mr. Palmieri: I have an objection to make, your honor.  (He still remained standing, and made no motion to sit down.)  The Court: Sit down.  There is nothing before the court.  Mr. Palmieri: Does your honor at this time refuse me to make an objection?  (He still remained standing, and made no motion to sit down.)  The Court: I require you to sit down, or I will punish you, and I will do it now.  When I tell you to sit down, and you do not sit down, you will be punished.  (Upon this Mr. Palmieri sat down, and instantly arose and proceeded.)  Mr. Palmieri: I ask to make an objection now. The Court: To what?  Mr. Palmieri: *First, I ask your honor to instruct the jury that the statement made by your honor in the presence of this jury, that you would punish me for contempt, is a statement that is not warranted in this case at all—prejudicial to my client's rights; and I take an exception to your honor making any such statement in the presence of this jury.*  The Court: Now sit down.  If you do not apologize for what you have said, at once, I shall punish you on the spot.  Now take your choice.  Mr. Palmieri: For what, your honor.  I would like to know for what.  (The request of Mr. Palmieri was read by the stenographer, it being the matter underlined above.)  The Court: Now, you apologize for making that request of me. Mr. Palmieri: Upon the direction of the court, I apologize—  The Court: No, you do not do it on the direction of the court.  Either you do it without any such proviso, or I will punish you.  Mr. Palmieri: After the court has made the statement, I comply with that statement by apologizing and taking an exception.  The Court: I do not take that.  I fine you $50 for contempt, and you stand committed until it is paid.  Withdraw a juror in this case. Mr. Palmieri: I will pay the money under protest.  The Court: You can pay the money any way you like.  Mr. Palmieri: We can try the case in the meantime?  The Court: No; withdraw a juror."

The return also states that:

"During the whole time after he was first directed to sit down, Mr. Palmieri's tone, air, and bearing were flagrantly insolent, defiant, and offensive toward the court, and, in connection with what he did and said, and refused to do, as above detailed, tended directly to interrupt the proceedings of the court and to impair the respect due to its authority.  Thereupon the court so determined, and summarily adjudged him guilty of a criminal contempt, and fined him $50, and caused the following entry to be made in the minutes: 'John Palmieri was adjudged guilty of a criminal contempt, in that he did on this 20th day of June, 1902, during the sitting of the court, in its immediate view and presence, behave in an insolent and disorderly manner, which behavior tended directly to interrupt the proceedings of the court and to impair the respect due to its authority, whereupon said Palmieri was fined fifty ($50) dollars, which he paid to the clerk in attendance.  Mr. Palmieri paid the fine to the clerk, saying that he paid under protest.' "

Under section 2135 of the Code of Civil Procedure, the relator could have applied for an order for a further return; but, as he did not do so, we must accept the allegations of fact in the return as final.  There can be no question but that these allegations are sufficient to justify the action of the court in adjudging the relator guilty of a criminal contempt, and we should have no hesitation in dismissing the writ, except for the condition of the entry in the minutes of the court.  In regard to this, the question arises whether, as required by section 11 of the Code of Civil Procedure, "the particular circumstances" of the

offense are set forth in the mandate of commitment. The relator cites People ex rel. Barnes v. Court of Sessions, 147 N. Y. 290, 41 N. E. 700, as authority that the final order or commitment or mandate must designate the particular misconduct of which the defendant is convicted. The court in that case said (page 297, 147 N. Y., page 702, 41 N. E.):

"The reason for the statute is perfectly apparent. In the criminal contempts committed in the immediate view of the court, it may punish summarily. The only record preserved is in the final order or mandate of the court entered in the minutes of the clerk. If the particular circumstances of the offense were not required to be set forth, there would be nothing that the accused could have reviewed, or that he could interpose as a defense to a subsequent conviction for the same act. If the court saw fit to call his act, no matter what it might be, a criminal contempt, that determination would of necessity be final, even though the act of the accused consisted in the putting on of his hat as he was going out of the courtroom door, and failed to come within any of the provisions of the Code constituting a contempt of the court."

But the decision adjudging the relators guilty of contempt, which the Court of Appeals reversed, was based on an entry which merely stated that the defendants were "guilty of criminal contempt of court," without any further specification of the particular circumstances of the offense. The contempt was not based on any action in the immediate presence of the court, but upon the fact that the relators in that case had published in the editorial columns of their newspaper an article which, in the language of the opinion, "reflected seriously upon the motives and actions of the judge presiding at the court of sessions." In that case there would have been no difficulty in setting out in the entry the article and its publication, as the particular circumstances. But the case at bar is very different. This was a contempt committed in the immediate view and presence of the court, and was of such a character that it is somewhat difficult to make a statement embodying the particular circumstances with such particularity as to identify absolutely the offense, to the exclusion of any similar offense at the same trial. The order states that the relator, in the immediate view and presence of the court, behaved in an insolent and disorderly manner, which tended to interrupt the proceedings of the court and impair the respect due to its authority. That is, in my opinion, a sufficient statement of the particular circumstances of the relator's offense. It is true that the entry might have gone farther, but it was sufficient to enable the relator to appeal if he had so desired. The order uses the language of section 8 of the Code of Civil Procedure, and even in an indictment for a statutory misdemeanor this would have been sufficient, where the indictment contained averments as to time, place, person, and other circumstances to identify the particular transaction. People v. West, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452.

For these reasons, I think that the writ should be dismissed, with costs.