PEOPLE ex rel. BERNSTEIN v. LA FETRA, City Court Justice.

(Supreme Court, Appellate Division, First Department. February 18, 1916.)

. 1. CERTIORARI ⬅️⮕64—EXTENT OF REVIEW.

On certiorari to review an order of commitment by a judge for contempt of court, the court is limited for review to the return, and cannot consider the facts stated in the petition and accompanying papers, except those facts as to which an admission, or its equivalent, is contained in the return.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. §§ 174, 175, 183, 184; Dec. Dig. ⬅️⮕64.]

⬅️⮕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CERTIORARI ☞56—REVIEW—RECORD.

Where on certiorari to review an order of commitment by a judge, the relator attached to his petition stenographer's minutes of the trial, as to which the return stated that they were incomplete, and added the matters necessary to complete them the court could consider the minutes, as corrected by the return, as a true history of the occurrences at trial.

[Ed. Note.—For other cases, see Certiorari, Cent. Dig. §§ 143, 144; Dec. Dig. ☞56.]

3. CONTEMPT ☞6—CONDUCT OF TRIAL—CONDUCT OF COUNSEL.

On trial of an issue it is the attorney's duty, in preserving his client's rights, to make appropriate objections and necessary exceptions, in doing which he is within his rights if he comports himself with due regard to the dignity and authority of the court.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 6, 9, 10, 13; Dec. Dig. ☞6.]

4. CONTEMPT ☞64—SUMMARY PROCEEDINGS—COMMITMENT—SUFFICIENCY.

Under Judiciary Law (Consol. Laws, c. 30) § 752, providing that, in case of contempt in the presence of a court by attorneys, the particular circumstances of the offense must be set forth in the mandate of commitment general allegations in the order of commitment of discourteous and insolent acts of an attorney *held* insufficient to justify the order.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 202–209; Dec. Dig. ☞64.]

5. CONTEMPT ☞64—SUMMARY PROCEEDINGS—COMMITMENT—SUFFICIENCY.

Specific charges of misconduct on which order of commitment rested *held* insufficient to justify the order.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 202–209; Dec. Dig. ☞64.]

Laughlin, J., dissenting.

Certiorari by the People, on the relation of David Bernstein, to review an order of commitment against the relator, made by Edward B. La Fetra, a Justice of the City Court. Writ sustained, and order of commitment reversed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

I. Maurice Wormser, of New York City, for relator.
Charles J. Nehrbas, of New York City, for respondent.

SCOTT, J. [1] The relator is an attorney at law practicing in the city of New York. The respondent is a Justice of the City Court of that city. The alleged contempt of which the relator was adjudged to be guilty occurred in the presence of the court on January 25, 1915, during the trial of an action entitled H. G. Vogel Company v. George N. Rheinhardt, wherein relator was attorney and trial counsel for the plaintiff. The charge of contempt is predicated upon the remarks and the conduct of relator during the progress of the trial, and for the alleged contempt he was, at the close of the trial, sentenced to pay a fine of $50 and to stand committed until such fine should be paid. The matter comes before this court upon the petition, the writ of certiorari, and the return. As is the rule in such cases the return is accepted as true, and the questions at issue are to be determined upon that assumption, for we are not at liberty to look behind the return, and to con-

sider the facts stated in the petition and accompanying papers, except such facts as to which an admission, or what is equivalent to an admission, is contained in the return. People ex rel. Miller v. Wurster, 149 N. Y. 549, 44 N. E. 298; People ex rel. Lester v. Eno, 176 N. Y. 513, 68 N. E. 868.

[2] In the present case the relator has attached to his petition the stenographer's minutes of the trial referred to, as to which the return states:

"This printed copy (of the minutes) is correct so far as it goes, but it does not contain all the colloquy between respondent and counsel, and omits many things which took place which are material to the issue in this proceeding. The matters which said transcript does not contain, and which are material to the proceeding, are hereinafter set forth."

We are therefore at liberty, within the rule above stated, to consider the stenographer's minutes as corrected by the return, as a true history of what took place on the trial.

[3] The action was for damages for the refusal of defendant to carry out a contract, and there developed early in the trial and continued throughout a radical difference of opinion between the views entertained by relator and those entertained by respondent as to the damages provable under the pleadings. An adherence by respondent to his views upon that subject would inevitably lead, as in the end it did, to a dismissal of the complaint, and the only hope that plaintiff could entertain of ultimately succeeding in the action, was to make the appropriate objections and take the necessary exceptions to preserve his client's rights upon an appeal. In doing this he was clearly within his rights, provided he comported himself with due regard to the dignity and authority of the tribunal before which he was appearing.

[4] The order of commitment which we are now called upon to review finds generally that relator was guilty of having acted throughout the trial in an insolent, discourteous, disorderly, and contemptuous manner, without specifying the precise manifestations of such manner, and also recites specifically an occurrence which took place at one stage of the trial, and which appears to be the particular act of contempt which led the respondent to act as he did in issuing the commitment. The general allegations of discourteous and contemptuous acts read as follows:

"One David Bernstein, an attorney, duly admitted to practice in the state of New York, and appearing on behalf of said plaintiff, did, during the sitting and in the immediate view, presence, and hearing of the said court, and while the said court was so engaged as aforesaid, contemptuously, insolently, and in a disorderly manner, so behave and conduct himself as to directly tend to interrupt its proceedings, and which said conduct and behavior did interrupt the proceedings of said court and impair the respect due to its authority by insolently, discourteously, disorderly and contemptuously, during the course thereof, disregarding the rulings and directions of the court in respect to the conduct of the said trial; and

"Whereas the court had repeatedly ruled under objections and exceptions that within the pleadings, the evidence adduced and the election of the defendant at the trial, one of the questions at issue was the value of the materials, labor, and services furnished by the plaintiff to the defendant in the installation of a fire preventative water sprinkling system in a certain building in the city of New York, and not the value of material in their damaged

condition claimed to have been furnished and damaged by water or fire while upon the premises of the defendant; and

"Whereas, the said David Bernstein repeatedly disregarded the court's several rulings thereon, and compelled it to admonish and caution him that he was directly, indirectly, and adversely criticising the same by propounding questions upon an issue already decided adversely to the defendant; that he was delaying, impairing, and impeding the orderly disposition of the trial, although plaintiff's interests had been amply protected by numerous exceptions; and

"Whereas, the court thereupon warned the said David Bernstein to refrain from further propounding questions as to the value of the goods in their claimed damaged condition on account of the fire, and that it would later consider his insolent, discourteous, disorderly, and contemptuous conduct."

The relator urges, and such seems to be the law, that the foregoing statements of his misconduct are insufficient to justify his punishment for a criminal contempt. Section 752 of the Judiciary Law (formerly section 11, Code of Civil Procedure) provides that in the case of such a contempt "the particular circumstances of his offense must be set forth in the mandate of commitment." The history of and the reason for this rule are fully set forth in People ex rel. Barnes v. Court of Sessions, 147 N. Y. 290, 296, 297, 41 N. E. 700. See, also, Roncoroni v. Gross, 92 App. Div. 366, 86 N. Y. Supp. 1113; People ex rel. Palmieri v. Marean, 86 App. Div. 278, 83 N. Y. Supp. 843. In the last case cited the final order much resembled the one now under review so far as concerns that portion which we are now considering. It recited that the relator in that proceeding, "in the immediate view and presence of the court, behaved in an insolent and disorderly manner, which tended to interrupt the proceedings of the court and impair the respect due to its authority." The Appellate Division in the Second Department, speaking through the present Chief Judge of the Court of Appeals, felt constrained, though with evident reluctance, to hold that this was an insufficient statement of the particular circumstances of the relator's offense, and fatal to the commitment upon review, notwithstanding the papers before the reviewing tribunal might amply and clearly establish the sufficiency of the proof to sustain the conviction of the relator. Upon the authority of these cases we feel constrained to hold that the recitation in general terms of the relator's misconduct, as stated in that portion of the commitment above quoted, was insufficient to justify his punishment.

[5] The specific charges of misconduct upon which the commitment must rest, if it is to be upheld, are thus set forth in the mandate:

"Whereas, later, during the examination of one Philip M. Betts, a witness called in behalf of the plaintiff, a paper or waybill of the New York Central & Hudson River Railroad Company was read in evidence and marked 'Defendant's Exhibit A,' and, upon consent, read into the record; and

"Whereas, the following questions were propounded by the said David Bernstein and proceedings had: 'By Mr. Bernstein: Q. From that paper it appears to have arrived in good condition? (Objected as a conclusion. Objection sustained.) Q. Does it appear whether it was in good or bad condition? (Same objection. Sustained.)

"And, whereas, said David Bernstein thereupon charged Mr. Taylor, counsel for the defendant, with having willfully refrained from reading Exhibit A to the jury, and omitting therefrom certain portions thereof in relation to the condition of material, whereupon the following proceeding was had: 'The Court: Read anything you wish to that is not on the record. Mr. Bern-

stein: Let it appear on record, from the paper in evidence, Defendant's Exhibit A, it does not appear that this material arrived in bad condition. Mr. Taylor: Object to that as highly improper. The Court: Do you think that is fair? Do you think you have complied with the court's instructions? Mr. Bernstein: I think I have. The Court: Don't ever do that again in this court while practicing before me. Go on with the case. Mr. Bernstein: I except to the court's remarks on the ground that I think I have complied with the court's instructions. The Court: If there is anything you want to read from the paper, Exhibit A, read it. Mr. Bernstein: That is all.'

"And, whereas, his attitude and demeanor were insolent, overbearing, discourteous, disorderly, and contemptuous.

"And, whereas, said Exhibit A was silent upon the condition of the articles mentioned in Exhibit A; and

"Whereas, the court charged the said David Bernstein with criminal contempt of court, in that he had disregarded the court's ruling, had not proceeded in the regular or orderly way, had not abided by its rulings and exceptions thereto, but had repeatedly reiterated questions and arguments without leave therefrom, and that his attitude and demeanor during the trial had indicated a want of respect, and requested said David Bernstein to apologize for his contemptuous conduct; and

"Whereas, instead of apologizing, he admitted the purpose of his actions and questions were to make it appear to the jury there was nothing in Exhibit A showing one way or the other whether the property arrived in good or bad condition."

Before discussing this charge of misconduct, it is necessary to state briefly how the question arose. Plaintiff had contracted to furnish a sprinkling system to a building owned by defendant. After some of the material had been delivered, but not put in place, a fire occurred in the building, the work of installation was suspended, and plaintiff retook the materials which it had delivered. Relator's theory of the case was that plaintiff was entitled to recover the damages which had been done to the materials in consequence of the fire. Respondent took the view that, under the pleadings, all that plaintiff was entitled to recover was the actual value of the materials, labor, and services furnished by the plaintiff to defendant in the installation of the sprinkling system, irrespective of any damage to such materials caused by the fire. To uphold his theory of the case relator deemed it necessary to show the condition of the materials when delivered and their condition when retaken, and many of the objections and exceptions found in the stenographer's minutes arose from his ineffectual efforts to make such proof. A portion of the material had been delivered by the New York Central & Hudson River Railroad Company, and relator's effort was to show, first, that the waybill contained no note that the goods had been delivered in other than good condition; and, second, that if the goods had been in other than good condition the waybill would have contained a note to that effect.

We feel bound to say that with regard to the particular incident recited in the commitment and quoted above we are unable to discover that the relator was either contemptuous or discourteous, and there is especially lacking any indication of that intent to defy the dignity and authority of the court which is a necessary element of a criminal contempt. As the waybill itself was to be taken out of court, so that it would not be available for exhibition to the jury when the time came to sum up the case, the relator was entitled to have on the rec-

ord as well what it did not contain as what it did, if the fact could in any view of the case have been relevant.

We recognize very fully the annoyance to which the courts are sometimes put by the contemptuous, recalcitrant, and disorderly conduct of attorneys in the trial of cases, and which is frequently expressed rather by the manner of the attorneys than by their spoken words, which can be reproduced upon the record. We must, however, accept the law and the facts as we find them, and, so doing, are constrained to hold that the recitation of relator's misconduct, as contained in the order brought up for review, does not sustain it.

The writ is therefore sustained, and the order of commitment reversed, without costs. Settle order on notice.

CLARKE, P. J., and McLAUGHLIN and PAGE, JJ., concur.

LAUGHLIN, J. (dissenting). I agree with Mr. Justice SCOTT that, where the contempt is committed in the presence of the court, the particular circumstances of the offense must be set forth in the commitment, and that a general characterization of the acts of the accused as insolent, discourteous, disorderly, and contemptuous would be insufficient; but I am of opinion that the commitment contains a sufficient recital of facts showing a criminal contempt.

It is recited in the commitment that the court had repeatedly ruled that the value of the material furnished by the plaintiff in the action, for whom the relator appeared as attorney, *in their damaged condition* after the fire, was not in issue, but that the questions at issue related to the value of the material, labor, and services performed and furnished by the plaintiff for and to the defendant in the installation of the fire preventive water sprinkling system, and that, notwithstanding such rulings, which were over objections duly interposed and taken in behalf of the plaintiff in the action, which fully preserved its rights, and after the relator had been admonished and cautioned against asking further questions with respect to the value of the material in its damaged condition, which the court had ruled to be immaterial, the relator persisted in asking questions with respect thereto; and it is further recited in the commitment that, after the court had ruled that it was not competent for the relator to ask questions of a witness on the stand with respect to what was *not* shown by a waybill read in evidence and marked Exhibit A, which the relator in open court charged counsel for the defendant with not having fully or accurately read to the jury, and that the relator was at liberty to read to the jury any part of the exhibit which he claimed had not been accurately read to them, the relator, instead of availing himself of the leave thus granted, persisted in insisting that it should appear on the record that the exhibit did not show that the material arrived in a damaged condition, and persisted in insisting that he was acting in accordance with the ruling of the trial judge. It is further recited in the commitment that the court charged the relator with having repeatedly reiterated questions and arguments in defiance of the rulings of the court, to which he had duly excepted, and that his attitude and demeanor indicated a want of respect, and requested him to apolo-

gize therefor, but that he failed so to do, and in effect insisted that he acted within his rights in every particular.

The return shows that the recitals in the commitment are true; and it is conceded that the return is conclusive in this proceeding. The relator's only remedy for any false statement in the return is by an action for damages for a false return.

The court represents the sovereignty of the state or nation under which it is organized; and it is necessarily clothed with full authority to control the proceedings and the action of counsel and others in the courtroom during the sessions of the court. It is, of course, the province of counsel to present fully the claims of his client; but when the court rules against him, in a manner to save by exception to the ruling the rights of his client, it is his duty to acquiesce therein without further discussion or argument, or conduct in defiance of the rulings of the court, or designed or calculated to obtain for his client the sympathy of the jury against what to him may seem an erroneous or unjust ruling, and he must look to redress for any error in the rulings by appeal or other review given by the law. The due administration of justice requires that the courts shall be clothed with authority to enforce their orders and decrees by contempt proceedings; and if they overstep their jurisdiction, or the bounds of propriety, a remedy is afforded by an application for their impeachment or removal.

The case at bar, as I view it, falls within the decision of this court in People ex rel. Chanler v. Newburger, 98 App. Div. 92, 90 N. Y. Supp. 740, in which one of the grounds on which we confirmed an adjudication for contempt committed in the presence of the court was the persistency of the relator, an attorney, in arguing a question after the court had announced that its ruling thereon was final.

I·therefore vote to confirm the proceeding and to dismiss the writ.