In the Matter of SAMUEL F. BERKON, Petitioner, against ROBERT F. MAHONEY, as Magistrate of the City of New York, Respondent.*

Supreme Court, Special Term, Kings County, June 23, 1943.

*Charles S. Lubin* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (George B. Rice* of counsel), for respondent.

NOVA, J. In this proceeding petitioner seeks to review (under article 78 of the Civil Practice Act) his adjudication in criminal contempt by respondent, a city magistrate of the City of New York. Proceedings in criminal contempt are wholly statutory. (*People ex rel. Munsell* v. *Court of Oyer and Terminer,* 101 N. Y. 245, 258.) Particularly is this so as to a city magistrate's court, which is a tribunal not of record and one of limited jurisdiction. Those instances in which it may so adjudicate are to be found in section 102-b of the New York City Criminal Courts Act (L. 1910, ch. 659, as amd.), in effect May 11, 1936, which provides: " A city magistrate shall have power to punish for criminal contempt in the manner provided by article nineteen of the judiciary law, a person guilty of any of the following acts, and no others: 1. Disorderly, contemptuous or insolent behavior

toward him while engaged in the hearing or examination of any case, or the summary trial or determination of any offense or charge, or any other judicial proceeding, where such behavior directly tends to interrupt the proceedings or to impair the respect due to his authority. 2. Breach of the peace, noise or other disturbance directly tending to interrupt his official proceedings. 3. Resistance wilfully offered in his presence to the execution of his lawful mandate.'' Assuming that the acts complained of fall within one or more of the specified categories, more is required. It is provided that punishment may be imposed only as provided in the Judiciary Law. Section 750 thereof states the offenses for which persons may be found guilty of criminal contempt in courts of record — a section with which we are not now concerned in view of the specific provisions of the New York City Criminal Courts Act above quoted. Section 751 prescribes the scope and limitation of punishment, and section 752 entitled '' Requisites of commitment for criminal contempt'' provides: '' Where a person is committed for contempt, as prescribed in section seven hundred and fifty-one, the particular circumstances of his offense must be set forth in the mandate of commitment.'' '' The practice is to have the court make an order finding the defendant guilty of contempt and then issue a commitment for the purpose of the execution of the order adjudging the delinquent guilty of the criminal contempt.'' (6 Wait's N. Y. Practice, 4th ed., p. 281.)

However, it has been held in instances where a court of record acts summarily for offenses committed in its presence that a formal separation of order and commitment is not necessary. (Cf. *Matter of Percy,* 2 Daly, 530, 531; see, also, *People ex rel. Barnes* v. *Court of Sessions,* 147 N. Y. 290, 296, 297, and *Matter of Waldman* v. *Churchill,* 262 N. Y. 247.)

Assuming that the same latitude is accorded a court not of record as is accorded a court of record in this respect and examining in the light of the foregoing a copy of the instrument attached to the return which bears the caption '' Summary Commitment for Contempt '', it appears therefrom that petitioner was, on December 16, 1942, adjudged guilty of criminal contempt for certain statements, acts and conduct therein enumerated '' all of which were committed during the session of the court and in its immediate view and presence, and directly intended to interrupt its proceedings and to impair the respect to its authority within the meaning of *section 102-a* of the New York City Criminal Courts Act, as provided by Article 19 of the Judiciary Law of the State of New York.'' (Italics supplied.)

But section 102-a of the New York City Criminal Courts Act gives no warrant or sanction for the aforesaid order. Section 102-a was formerly section 127-c as enacted by chapter 661 of the Laws of 1939. It was renumbered by chapter 710 of the Laws of 1942 [eff. May 8, 1942]. It is entitled " Exclusive jurisdiction of magistrate," and provides: " A city magistrate shall have exclusive jurisdiction to hear and determine any complaint alleging a violation of any provision of law, rule or regulation relating to vehicular or pedestrian traffic."

It is apparent, therefore, that such section recited as the basis for this adjudication is inapplicable. What respondent meant to recite in his commitment order evidently was the present section 102-b of the New York City Criminal Courts Act, hereinabove referred to, which was in effect on December 16, 1942, the date when the alleged contempt herein was committed. This section prior to May 8, 1942, was known as section 102-a, but, by chapter 710 of the Laws of 1942, it was on that date renumbered and re-enacted, as aforesaid.

That proceedings in contempt are *stricti juris* is well established. (*Goldie* v. *Goldie*, 77 App. Div. 12, 14.) Because the power to attach and commit for criminal contempt, unless otherwise restricted, would be arbitrary and unlimited, and because it involves the withdrawal of the offense from the cognizance of a jury (cf. *Matter of N. Y. County Lawyers' Assn.* v. *Lehman*, 256 App. Div. 677, 679), and because the particulars of the offense should be specified with precision for purposes of review (*People ex rel. Barnes* v. *Court of Oyer & Terminer*, 147 N. Y. 290, 297, *supra; Matter of Cleary*, 237 App. Div. 519, 521), the appellate courts insist that the order of commitment be exact in apprising the person so adjudicated of the particulars of his offense and that every requirement of the statute be observed. (Cf. *Matter of Marinsky* v. *Ranald*, 259 App. Div. 849.) This is not an over-meticulous nicety but a requirement founded on fundamental principles and considerations.

As stated in *Fromme* v. *Gray* (14 Misc. 592, 594, affd. 148 N. Y. 695): " And this stringency of construction is all the more applicable to an offense to conviction of which neither an indictment nor the verdict of a jury nor common-law evidence is necessary in a trial for which the accused is not confronted with the witnesses against him, nor allowed the inestimable privilege of cross-examination, nor protected by any of the legal safeguards of criminal justice, and upon sentence for which he may be confined in close custody for an indefinite period (Code [Civ. Pro.], § 2285; *Matter of Watson* v. *Nelson*, 69 N. Y. 536, 544)."

Courts should be alert to preserve that degree of decorum and respect which is essential to the preservation of their dignity and the proper administration of justice. But when punishment so swift and so severe can follow accusation and conviction in such concurrence as to be practically simultaneous, it becomes at once apparent why our courts insist on a strict and literal construction of contempt statutes and why they accord to an accused all rights which the law may afford him, even the most technical.

In an adjudication of civil contempt failure of the order to follow the language of the statute in its recitals that the conduct of the accused '' was calculated to or actually did defeat, impair, impede or prejudice the rights or remedies of the judgment debtor '' has been held fatal. (*Matter of Marinsky* v. *Ranald*, 259 App. Div. 849, *supra*, and authorities therein cited.) Likewise, in a proceeding for criminal contempt the failure to recite the word '' wilful.'' (*Pawolowski* v. *Schenectady*, 217 N. Y. 117.) In civil contempt, failure to serve the accused with a certified copy of the order which he is required to obey, with specifications, clear and explicit, although he may actually know of same, is fatal. (*Feit* v. *Feit*, 224 App. Div. 857.) Likewise upon adjudication or conviction the mandate of commitment must be sufficient on its face, without necessity to go outside thereof to piece it out or supplement or correct it, so that the accused and his jailers may know for what act or dereliction he stands committed and what will suffice to free him. (*Matter of Boland* v. *Parisi*, 259 App. Div. 847; *People ex rel. Barnes* v. *Court of Sessions*, 147 N. Y. 290, *supra*, pp. 296, 297.) Conclusory statements are condemned. (*People ex rel. Bernstein* v. *La Fetra*, 171 App. Div. 269, affd. 219 N. Y. 591; *People ex rel. Palmieri* v. *Marean*, 86 App. Div. 278.)

In view of the summary nature of the proceedings and the swiftness and severity of the punishment which can follow upon a conviction, there is reason why procedural requirements should be held to a higher and more exacting standard than would be requisite for an information or an indictment where the statute itself liberalizes the rules to be applied and the accused has the safeguards of customary criminal procedure.

To one charged with and convicted of a summary contempt it is at least due that he should not be misled by the only document which purports to recite the offense for which he has been committed. The discrepancy in the proceeding under review may have been slight and the error understandable, but conceivably it might have been greater. The principle remains the

same. Why should an accused, especially where. as here, his sole remedy is by a review of this nature (*Matter of Douglas* v. *Adel,* 269 N. Y. 144, 147; Civ. Prac. Act, § 1285, subd. 2), be put to the hazard and onus of searching a code in an attempt to identify and ascertain or reconcile the offense for which he stands committed?

As was said in *Matter of Cleary* (237 App. Div. 519, 522, *supra*): '' When, however, to maintain the dignity of the court, it becomes necessary to commit a person for contempt, it seems to us that the court should familiarize itself with the procedure to be followed in order that the order of commitment, when proper, may be sustained on appeal.''

There is no adjudication, furthermore, in this order that the conduct of the petitioner was willful, which would seem to be essential in an offense criminal in nature and involving therefore the element of intent.

One of the most serious of the acts with which the petitioner under the aforesaid order was charged and was adjudged guilty of criminal contempt was disobedience of the order of the court in leaving the courtroom when ordered not to do so. Assuming that the court had the right to exercise such restraint over the person of the petitioner, in view of the fact that petitioner was not present under a warrant of arrest, that no trial was in progress and that the complaining witness was not even present; and assuming that a violation of section 102-b of the New York City Criminal Courts Act was properly charged; and assuming, further, that the petitioner's act would fall within the statutory category of ''resistance wilfully offered in his (i.e., the court's) presence to the execution of his lawful mandate '' (subd. 3 thereof), the failure to adjudicate that such act was '' wilful '' would be a fatal omission. (See *Pawolowski* v. *Schenectady,* 217 N. Y. 117, 118, *supra.*) It has been held that such an invalidity cannot even be cured by an amendment or resettlement. (*Matter of Carlino* v. *Downs,* 244 App. Div. 801.)

For the reasons stated, I am of the opinion that the order of commitment herein was defective and that the defect was fatal.

Such conclusion is not to be construed as approving in any way the conduct of the petitioner, which, if respondent was warranted in his determination, can only be condemned as reprehensible. This court finds it unnecessary, however, for the reasons stated, to deal with that phase of the matter, to resolve the facts or the accuracy or nonaccuracy of the disputed record.

The adjudication accordingly is annulled and the fine remitted. Submit order on notice.