William C. SCOTT, Petitioner,

v.

Lester DAVIS, Sheriff of Howell County, Missouri, Respondent.

No. 7830.

Springfield Court of Appeals.

Missouri.

Oct. 21, 1959.

William C. Scott, West Plains, pro se.

Richard D. Moore, West Plains, for respondent.

RUARK, Judge.

This is habeas corpus. The petitioner, an attorney, was by the magistrate court of Howell County fined ten dollars for contempt of court and upon refusal to pay such fine was committed to jail. The return to the writ sets out the order of commitment, which is as follows:

"Whereas, Wm. C. Scott, Attorney at law, did, on the 26th day of August, 1959, conduct himself in a disorderly, contemptuous and insolent behavior during a session of Magistrate Court of Howell County, Missouri, in the presence of the Court, the Prosecuting Attorney and audience, by then and there accusing the Court of malicious conduct and by heated argument against the Court over the direction and admonition of the Court to discontinue such argumentative attack and conduct, in the following respects, to-wit:

"At the close of the evidence in the preliminary hearing in the case of State of Missouri v. Louise Marcak, No. 4416, in binding the said Louise Marcak over to the Circuit Court of Howell County, Missouri, on the charge of enticing and taking her own child from its legal custodian, the Court remarked it was a shame that such a matter as this had come up, but that either she had no respect for Court Orders (court orders placing custody of her children) or that she was mis-advised (mis-advised as to such orders). At this point, Wm. C. Scott objected, stating that he represented Louise Marcak, and that he had not mis-advised her. The Court then informed attorney Wm. C. Scott, that such remark was directed to Louise Marcak and not to him. Thereupon, Wm. C. Scott accused the Court of malicious conduct and proceeded in a heated argument against the Court. The Court then directed Mr. Scott to discontinue such verbal attack. Upon continuance of such by Mr. Scott, the Court warned him that he would be found in contempt of Court unless he came to order. Wm. C. Scott continued such conduct as described above and the Court found him in contempt and fined him $10.00. Mr. Scott announced that he refused to pay the said fine, and, upon continuing such conduct as above described, was removed from the Courtroom by the sheriff at the direction of the Court.

"Wherefore, the Court does, by reason of the premises aforesaid, adjudge the said Wm. C. Scott in contempt of Court and does assess the punishment of Wm. C. Scott at a fine of $10.00."

The petitioner has filed motion for judgment on the pleadings. It is necessary that

we first determine such motion by considering the sufficiency of the order of commitment. If such order be found insufficient and the motion for judgment be sustained, the case ends there without regard to what the evidence is or might be.

The offense for which the petitioner was committed was direct criminal contempt in the face of the court [1] and falls within Section 476.110, RSMo 1949, V.A.M.S. Section 476.140 provides that whenever any person be committed for such contempt *the particular circumstances* shall be set forth in the order or warrant of commitment. Such statutes are but declaratory of the common law.[2]

■■■ Since the purpose of such a proceeding is to punish, it takes on some of the attributes of a criminal case, and by the great weight of authority, with which the courts of this state agree, the "particular circumstances" must be set forth in the order in such manner as to show *the actual facts* (sometimes called "the concrete facts") as they transpired, not simply the conclusions of the sentencing judge, not even the ultimate facts when it is possible to state the constituent and component facts and circumstances which make up the offense. The judgment or order of commitent is construed strictly in favor of the accused in this respect; and no inferences,

presumptions or intendments are to be indulged in order to aid the statement of charges found against the accused.[3] The reasons given for the rule are various, but perhaps the greatest real reason is that the courts, while of necessity bound and required to preserve the orderly processes through which justice is administered, are inclined to lean over backward in the consideration of a subject which involves any matter concerning their own fairness. Whatever the historical reason, the rule is firmly grounded in precedent, to such extent in Missouri that, where it is possible to repeat the actual words which are involved in a charge of refusal to answer questions, the actual words of the questions and answers must be set forth.[4] We see little actual difference in reason or analogy in requiring the actual words (or the substance thereof) in a question to and answer by a witness and in the statements made by an attorney in open court; and it is our conclusion that the judgment finding the accused guilty of contempt because of words uttered in the courtroom should set forth the words so spoken, or the substance thereof in fact (and not conclusion), with sufficient particularity that another or superintending court can from reading such judgment determine therefrom, without resort to inquiry, intendment, inference or presumption, whether they constitute contempt. This is the general rule.[5]

1. For definitions and classification of direct and indirect, criminal and civil contempt, see 12 Am.Jur., Contempt, sec. 4, p. 390, sec. 6, p. 392; 17 C.J.S. Contempt §§ 3–5, pp. 6–8; State ex inf. Crow v. Shepherd, 177 Mo. 205, 76 S.W. 79; Carder v. Carder, Mo.App., 61 S.W.2d 388; Ex parte Clark, 208 Mo. 121, 106 S.W. 990, 15 L.R.A.,N.S., 389.

2. In re Elliston, 256 Mo. 378, 165 S.W. 987, 990; Reardon v. Frace, 344 Mo. 448, 126 S.W.2d 1167.

3. G—— v. Souder, Mo.App., 305 S.W.2d 883; Reardon v. Frace, 344 Mo. 448, 126 S.W.2d 1167; Ex parte Fuller, 330 Mo. 371, 50 S.W.2d 654, 657; Sands v. Richardson, Mo.App., 252 S.W. 990, 994; Ex parte Shull, 221 Mo. 623, 121 S.W. 10; Ex parte Heffron, 179 Mo.App. 639, 162

S.W. 652; Ex parte Stone, Mo., 183 S.W. 1058; Ex parte Creasy, 243 Mo. 679, 148 S.W. 914, 41 L.R.A.,N.S., 478; Ward v. Lamb, Mo., 177 S.W. 365; Ex parte O'Brien, 127 Mo. 477, 30 S.W. 158, 160; Novak v. Weismantel, Mo.App., 261 S.W. 2d 491; Willett v. Tichenor, Mo.App., 220 S.W. 709; see annotation 154 A.L.R. p. 1236; 17 C.J.S. Contempt § 86c, p. 123, et seq.; see 7 Mo.Law Review 241, note 48.

4. Ex parte Shull, 221 Mo. 623, 121 S.W. 10; Ex parte Creasy, 243 Mo. 679, 148 S.W. 914, 922; Novak v. Weismantel, Mo.App., 261 S.W.2d 491; Ward v. Lamb, Mo., 177 S.W. 365.

5. Crites v. State, 74 Neb. 687, 105 N.W. 469; Ogden v. State, 3 N.Unoff. 886, 93 N.W. 203; State ex rel. Breen v. Dis-

The attorney for respondent, while conceding the general rule, argues, and argues ably, that it should not and does not apply to proceedings for summary criminal contempt; that oftentimes (as perhaps in this case) there is no record of the proceedings and that it may be inconvenient, if not impossible, to set forth in detail the things done and the words spoken. The answer to that lies in the very argument. In a direct contempt the accused contemnor is confronted by an accusation made by the judge, who is both the complaining party and the jury. He, the alleged contemnor, is entitled to no notice, no written charge, no statement of particulars. He is not entitled to a hearing in the ordinary sense of the word, and often the only record is the order which the judge makes. He cannot take a change of venue or demand trial by jury. He cannot appeal. However sure we may be of the absolute integrity of the magistrate (as we are in this case) and though we accord to him every possible attribute of cold, impersonal judicial fairness, he is, as is any judge, still the person in the chair which has been affronted, and he *is* a human being. We would demand of him superhuman qualities if we did not expect his previously drawn conclusions from the things which have occurred to have some influence upon his interpretation of the remarks which he regards as an affront when he undertakes to pass upon the question of whether the acts done, or (in this instance) the words spoken, constitute an insolence, embarrassment or interference in the orderly judicial processes.[6] As a matter of fact, the requirement for particularity in regard to actual concrete facts, not conclusions, has been emphasized in summary proceedings for direct contempt more strongly than in any other type of contempt case.[7] The rule so stated may in some instances place an undue burden upon the trial court in setting forth the happenings in his record, but, whatever the provocation might be in the individual case, we are not at liberty to disregard it. In the words of Judge Kennish (Ex parte Creasy, 243 Mo. 679, 148 S.W. 914, 923), "We cannot have different doctrines of habeas corpus law, one applicable to whisky cases, and the other for the higher toned cases."

So the question in this case is, does the judgment relate and set forth the "particulars" of the offense, or are the statements therein simply the conclusion of the sentencing judge? The order recites that the accused was guilty of contemptuous behavior by "accusing the Court of malicious conduct and by heated argument against the Court," and that he continued such "argument," "attack," and "conduct" after having been directed by the court to discontinue such "verbal attack," and "upon continuance of such" he was warned by the court but continued "such conduct as described," whereupon he was adjudged guilty of contempt.

As we view it, this order makes out three possible charges against the accused. One is that he engaged in "heated argument." What is a heated argument? A firm and unyielding difference of opinion between two people, although expressed in quiet language and in polite terms, might, to some people, constitute a heated argument; with

---

trict Court, 34 Mont. 107, 85 P. 870; People ex rel. Bernstein v. La Fetra, 171 App.Div. 269, 157 N.Y.S. 386; State ex rel. Rankin v. District Court, 58 Mont. 276, 191 P. 772; State ex rel. Arthaud v. District Court, 124 Iowa 187, 99 N.W. 712; Cress v. State, 14 Okl.Cr. 521, 173 P. 854; Ex parte Shortridge, 5 Cal. App. 371, 90 P. 478; State ex rel. Stanton v. Murray, 231 Ind. 223, 108 N.E.2d 251, 257, 259; In re Moxcey, 9 Kan.App. 262, 59 P. 672; Ex parte Mettler, 50 Mont. 299, 146 P. 747; People ex rel. Palmieri v. Marean, 86 App. Div. 278, 83 N.Y.S. 843; Ex parte Lake, 65 Cal.App. 420, 224 P. 126.

6. See Ex parte Howell, 273 Mo. 96, 200 S.W. 65, 69.

7. See cases under notes 4 and 5. The annotation at 154 A.L.R. 1238 is devoted principally to such character of contempt. See also West Digest system, Contempt ⊜63, 64, Habeas Corpus ⊜106.

others, nothing less than a barroom brawl would fit this description. Lawyers, in dead earnest in the representation of their clients, sometimes engage in "heated argument" with each other, sometimes with witnesses, on infrequent occasions with the court. Occasionally one will become so carried away by and entangled in his own forensic efforts that he seems to be having a heated argument with himself. But all heated arguments are not contemptuous.[8] The only actual language used or words spoken by the accused which are substantially set forth are that "at this point, Wm. C. Scott objected, stating that he represented Louise Marcak, and that he had not mis-advised her." There is nothing contemptuous in these words alone. A lawyer has the right to defend himself from real or fancied accusations of misadvice to a client by stating that he has not misadvised her, provided his manner and language are moderate and respectful.[9] It is not charged that the words were uttered in a loud voice or in any fashion which tended to disturb or disrupt the proceedings. We think the statement that the accused indulged in a heated argument is nothing but a conclusion.

■ Of more serious import and difficult to construe is that "Wm. C. Scott accused the Court of malicious conduct." Is that a conclusion which renders the order insufficient, or is it a statement of facts, words and language uttered by the accused? Looking at it one way, this *can* be interpreted as a statement of language uttered, viz., *"I accuse this court of malicious conduct."* Under such interpretation the re-

mark so uttered, in a courtroom and while court is in session, is, under most circumstances, contemptuous and should be punished. Whatever may be the private, personal opinion of the counselor, such remark ordinarily has no place in a courtroom. The necessity for preservation of the orderly processes and the dignity of the judiciary require that due deference be paid to the chair while engaged in furthering these processes; and any occupant of that chair has not only the right but the *duty* to the system which he represents to be stern and unyielding in the prompt punishment of the offender, even though personal considerations might make it more easy to ignore the offense.

But the charge is equally susceptible of the interpretation that the accused uttered words, made talk, which left the impression, insinuated, implied, or from which it could be inferred that the magistrate was guilty of malicious conduct. The net effect of this interpretation is that the statement that the petitioner accused the court of malicious conduct is a conclusion, an opinion of the whole import and *effect* of the statements rather than the actual utterance. As we have said heretofore, conclusions won't do. The actual words uttered must be set forth with sufficient particularity that the superintending court may draw *its* conclusions.[10]

■ Thus the order is susceptible of two interpretations. Under one the charge is sufficient; under the other the charge is simply a conclusion. In this dilemma we must give due regard to the proposition that the courts have shown utmost caution in

8. See Platnauer v. Superior Court, 32 Cal. App. 463, 163 P. 237, 242.

9. And, if it is pertinent to the matter or motion before the court, and if he presents it fairly and in a respectful manner, he is entitled to call the court's attention to matters which show bias on the part of the judge. In re Rotwein, 291 N.Y. 116, 51 N.E.2d 669; Ex parte Lake, 65 Cal.App. 420, 224 P. 126.

10. In Gallagher v. Municipal Court of City of Los Angeles, 31 Cal.2d 784, 192

P.2d 905, 913, the Supreme Court said, "The public interest in an independent bar would be subverted if judges were allowed to punish attorneys summarily for contempt on purely subjective reactions to their conduct or statements."

In State v. Whitaker, 75 Mo.App. 184, a complaint that the defendant "did then and there unlawfully and falsely *accuse* my daughter Mabel Canaday of fornication and whoredom" was held insufficient as stating no fact.

limiting their own vitally necessary but arbitrary power through summary contempt [11] and defer to the doctrine of strict construction in favor of the accused. No intendments or inferences can be indulged *against* the accused and in favor of the order. The construction must be the other way. We must therefore find that the charge made in the order adjudging the contempt, that the alleged contemnor accused the court of malicious conduct, is nothing more than a conclusion of the sentencing judge; and though we recognize that record of these matters is usually hurriedly drawn and written under stress, and that many circuit judges have fallen into the same error of expression, nevertheless we are constrained to hold that the charge that the contemnor "accused" the court is, in and of itself, insufficient in a contempt order of this character. After all, it should not be *too* difficult for trial judges to set forth in substantially concrete terms *what the contemnor said*. In that way a superintending court may, from such order, determine exactly what the acts or words were and whether they were contemptuous.

The only other possible offense we find stated in the order is that the accused *continued* such "argument," "attack," and "conduct" after being admonished to desist. This is but a statement that accused went forward with, or repeated, the things which we have already said are so stated as to be nothing but conclusions. If we do not know what the accused said or did which was contemptuous, we cannot say that his repetition of such language was contemptuous. A well bucket without a bottom brings up no more water on the second and third drawing.

 We suggest that judge and attorney are servants in the temple of justice. Both serve The Blind Lady in different but essential capacities. They are mutually dependent upon each other. Neither could survive without the other. Such being the case, it devolves upon the magistrate to be dispassionate, temperate, and considerate in his dealings with counsel; and it is required of the attorney as an officer of the court that he be respectful and deferential in his dealings with the representative of the law who sits as judge.[12] By any other attitude he dishonors both himself and his profession.

We find the order insufficient. The motion for judgment on the pleadings is sustained and we order the petitioner be discharged.

STONE, P. J., and McDOWELL, J., concur.

---

11. Lyons v. Superior Court, 43 Cal.2d 755, 278 P.2d 681, 685.

12. People v. Harrington, 301 Ill.App. 185, 21 N.E.2d 903.